# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| LAURA BELL MCKINLEY a/k/a<br>LAURA BELL CROSS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 212-124 |
| | * | |
| FEDERAL HOME LOAN MORTGAGE<br>CORP.,<br>SAXON MORTGAGE SERVICES, INC., and<br>JOHN DOE CORPORATION, | * | |
| | * | |
| Defendants. | * | |

## ORDER

Presently before the Court is Defendant Federal Home Loan Mortgage Corporation's ("FHLM") Motion to Dismiss.  See Dkt. No. 88.  Also before the Court are Defendants' Motions for Summary Judgment.  See Dkt. Nos. 56; 59.  Upon due consideration, Defendant FHLM's Motion to Dismiss is **GRANTED** (Dkt. No. 88), Defendant FHLM's Motion for Summary Judgment is **DENIED** as moot (Dkt. No. 59), and Defendant Saxon Mortgage Services, Inc.'s ("Saxon") Motion for Summary Judgment is **GRANTED** (Dkt. No. 56).

1

AO 72A
(Rev. 8/82)

## I.   BACKGROUND

This action is predicated on Defendants' allegedly wrongful foreclosure of Plaintiff's property.  See Dkt. Nos. 1; 84.

On March 20, 2012, Plaintiff filed her Complaint in the Atlanta Division of the Northern District of Georgia.  See Dkt. No. 1.  Plaintiff brought her Complaint against Defendant Saxon, Defendant FHLM, and Defendant John Doe Corporation.  See id.  In a May 25, 2012 Order, Judge Charles Pannell dismissed, without prejudice, Plaintiff's claims against Defendant John Doe Corporation.  See Dkt. No. 18.  On July 9, 2012, Plaintiff's case was transferred to the Brunswick Division.  See Dkt. No. 28.

During a March 13, 2013 hearing, this Court granted Plaintiff leave to amend her Complaint.  See Dkt. No. 85.  The Court simultaneously granted Defendant FHLM leave to amend its Answer and respond to Plaintiff's Amended Complaint.  See id.

Plaintiff's Amended Complaint asserts six (6) causes of action.  See Dkt. Nos. 1; 84.  Specifically, Plaintiff brings claims for (1) wrongful foreclosure; (2) quiet title; (3) injunctive relief to prevent execution of a writ of possession against the Property; (4) attorney's fees; (5) punitive damages; and (6) leave to pay monthly mortgage

2

installments into the Court's registry.  See Dkt. Nos. 1; 84.
In the alternative, Plaintiff seeks nominal damages.  See Dkt.
No. 1 ¶¶ 109-111.

Currently before the Court is Defendant FHLM's Motion to
Dismiss Plaintiff's Amended Complaint.  See Dkt. No. 88.  Also
before the Court are Defendants' Motions for Summary Judgment.
See Dkt. Nos. 56; 59.  These motions are fully briefed.  See
Dkt. Nos. 66; 67; 74; 77; 89.  The Court heard oral argument
regarding the motions on March 13, 2013.

## III. DEFENDANT FHLM

Defendant moved to dismiss Plaintiff's Amended Complaint.
See Dkt. No. 88.  In the alternative, Defendant FHLM moved for
summary judgment on all claims against it.  See Dkt. No. 59.

### A. Legal Standard

In considering a motion to dismiss brought pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure, the
district court must "construe[] the complaint in the light most
favorable to the plaintiff and accept[] all well-pled facts
alleged . . . in the complaint as true."  Sinaltrainal v. Coca-
Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).  To survive a

3

motion to dismiss for failure to state a claim under
Rule 12(b)(6), a complaint need not contain "detailed factual
allegations" but must include enough facts to raise a right to
relief above the "speculative level." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007). The complaint must allege
"enough facts to state a claim to relief that is plausible on
its face" meaning that the factual content "allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Speaker v. U.S. Dep't of Health &
Human Servs., 623 F.3d 1371, 1380 (11th Cir. 2010).

B. Factual Background

    For the purposes of Defendant FHLM's Motion to Dismiss, the
Court presents the factual allegations contained in Plaintiff's
Amended Complaint.[1]  See Dkt. Nos. 1; 84.

    In 2002, Plaintiff acquired title to the real property that
is the subject of this dispute ("Property"). Dkt. No. 1 ¶ 10.
In 2005, a lender provided Plaintiff with a refinanced loan
("Loan"). Id. ¶ 13. Plaintiff executed a promissory note in

---

[1] For purposes of the Motion to Dismiss, the allegations in Plaintiff's
Amended Complaint are taken as true. Mohamad v. Palestinian Auth., 132 S.
Ct. 1702, 1705 (2012).

favor of the lender ("Note").   Id. ¶ 14.   Plaintiff
simultaneously executed a Security Deed attaching the Property
as collateral for the Loan.   Id. ¶ 15.   The Security Deed
conveyed title to the Property to Mortgage Electronic
Registration Systems, Inc. ("MERS") as nominee for the lender.
Id.   The Security Deed granted MERS a "power of sale," which
authorized MERS to sell the Property at public auction in the
event of an uncured default.   Id. ¶ 16.

Thereafter, Defendant FHLM "acquired title to, ownership
of, and/or became the holder of the Loan and the Note."   Dkt.
Nos. 1 ¶ 19; 84 ¶ 20.   Defendant Saxon began servicing the Loan
on behalf of Defendant FHLM.   Dkt. No. 84 ¶ 21.

Plaintiff subsequently stopped making Loan payments.   She
failed to timely cure her default.   Dkt. No. 1 ¶¶ 26, 31.

In early August 2011, MERS, as nominee for the lender,
assigned the Security Deed to Defendant Saxon ("Assignment").
Id. ¶ 44.   The Assignment was not attested to by a corporate
secretary or other authorized person.   Id. ¶ 46.   The Assignment
also lacked a corporate seal.   Id.

On November 1, 2011, the Property was sold at auction.   Id.
¶ 58.   On January 20, 2012, Defendant Saxon conveyed title to
the Property to itself by foreclosure deed.   Id. ¶ 67.   That

5

same day, Defendant Saxon conveyed title to the Property to
Defendant FHLM. <u>Id.</u> ¶ 68.

C. <u>Discussion</u>

Plaintiff alleges that the Assignment of the Security Deed
from MERS to Defendant Saxon was improper. <u>See</u> Dkt. Nos. 1; 84
(alleging that Defendant "Saxon did not take a due and proper
assignment of the [S]ecurity [D]eed"). In particular, Plaintiff
alleges that the Assignment was not attested to by a corporate
secretary or other authorized person and that the Assignment
lacked a corporate seal. Dkt. No. 1 ¶ 46. Plaintiff further
argues that, because the Assignment of the Security Deed was
improper, Defendant Saxon "lacked the authority to foreclose on
the . . . Property." Dkt. No. 84 ¶ 75. Plaintiff does not
directly challenge MERS's authority to assign the Security Deed
or sell the Property. Instead, Plaintiff argues that the
Assignment was improperly executed and, therefore, downstream
transactions and acts by Defendants that were related to the
foreclosure were fatally flawed. <u>See</u> Dkt. No. 89.

Defendants argue that Plaintiff does not have standing to
challenge the validity of the Assignment because she was not a

6

party to the Assignment contract.  <u>See</u> Dkt. No. 88.  The Court agrees.

Georgia law provides:  "As a general rule, an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent."  O.C.G.A. § 9-2-20(a). Moreover, courts have repeatedly rejected the argument that a homeowner has standing to challenge the assignment of a security deed that grants the assignor a power of sale.  <u>See, e.g.</u>, <u>Handfield v. Wells Fargo Bank, N.A.</u>, No. 1:12-CV-01080-RWS, 2013 WL 1501942, at *5 (N.D. Ga. Jan. 23, 2013) <u>report and recommendation adopted</u>, No. 1:12-CV-1080-RWS, 2013 WL 1501940 (N.D. Ga. Mar. 6, 2013); <u>Bandele v. Deutsche Bank Nat'l Trust Co.</u>, No. 1:11CV4257TWT, 2012 WL 1004990, at *2 (N.D. Ga. Mar. 22, 2012) (concluding that the plaintiffs lacked standing to challenge the assignment of a security deed because they were not parties to the assignment); <u>Montoya v. Branch Banking & Trust Co.</u>, No. 1:11-CV-01869-RWS, 2012 WL 826993, at *4 n.3 (N.D. Ga. Mar. 9, 2012) (finding that the plaintiff did not have standing to challenge the assignment as defective due to forgery because she was a stranger to the assignment); <u>Rosenhaft v. BAC Home Loans Servicing, LP</u>, No. 1:11-CV-2519-TWT, 2012 WL 484842,

7

at *2 (N.D. Ga. Feb. 14, 2012) ("Plaintiff does not have standing to challenge the assignment from [the assignor] to [the assignee] because he was not a party to the assignment."); Woodberry v. Bank of Am., N.A., No. 1:11-CV-3637-TWT, 2012 WL 113658, at *2 (N.D. Ga. Jan. 12, 2012) (same); McFarland v. BAC Home Loans Servicing, LP, No. 1:11-CV-04061-RWS, 2012 WL 2205566, at *3 (N.D. Ga. June 14, 2012) ("[A]s a stranger to the [a]ssignment contract, [the p]laintiff lacks standing to challenge it.").   Thus, Plaintiff lacks standing to assert claims that rely upon the alleged invalidity of the Security Deed's assignment.   To the extent that Plaintiff alleges such claims, they are **DISMISSED**.

Moreover, Plaintiff failed to allege a contractual relationship between Plaintiff and Defendant FHLM related to the Security Deed.   Consequently, to the extent that Plaintiff asserts contract-based claims against Defendant FHLM, such claims are **DISMISSED** for failure to state a claim upon which relief can be granted.

Because all claims asserted against Defendant FHLM are predicated upon either the validity of the Assignment or a contractual relationship between Plaintiff and Defendant FHLM with respect to the Security Deed, Plaintiff failed to assert

8

claims against Defendant FHLM upon which relief can be granted. Consequently, Defendant FHLM's Motion to Dismiss is **GRANTED**. Accordingly, Defendant FHLM's Motion for Summary Judgment is **DENIED** as moot.

## IV.   DEFENDANT SAXON

Defendant Saxon moved for summary judgment on all claims against it.  <u>See</u> Dkt. No. 56.

## A. <u>Legal Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  <u>FindWhat Investor Grp. v. FindWhat.com</u>, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>  In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable

9

inferences in that party's favor.  Johnson v. Booker T.
Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir.
2000).

The party seeking summary judgment bears the initial burden
of demonstrating the absence of a genuine issue of material
fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To
satisfy this burden, the movant must show the court that there
is an absence of evidence to support the nonmoving party's case.
Id. at 325.  If the moving party discharges this burden, the
burden shifts to the nonmovant to go beyond the pleadings and
present affirmative evidence to show that a genuine issue of
fact does exist.  Anderson, 477 U.S. at 257.

B.  Factual Background

For the purposes of Defendant Saxon's Motion for Summary
Judgment, the Court draws all inferences and presents all
evidence in the light most favorable to Plaintiff.[2]  See Hamilton
v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th
Cir. 2012).

---

[2] Plaintiff failed to respond to Defendant Saxon's statement of material facts
supporting its motion.  Pursuant to Federal Rule of Civil Procedure 56(e) and
Local Rule 56.1, all material facts not specifically controverted by specific
citation to the record are deemed admitted, unless otherwise inappropriate.

10

In 2002, Plaintiff acquired title to the Property.  Dkt. No. 55 ¶ 18.  In June 2005, Taylor, Bean & Whitaker Corporation ("Taylor Bean") provided Plaintiff with a refinanced loan ("Loan").  Plaintiff executed a promissory note in favor of Taylor Bean ("Note").  Plaintiff simultaneously executed a Security Deed attaching the Property as collateral for the Loan. Id. ¶ 19.  The Security Deed conveyed the Property to MERS as nominee for Taylor Bean.  Id.

Thereafter, Defendant Saxon became the holder of the Note. See id. ¶ 20.  Neither the Note nor the Security Deed required Taylor Bean or Defendant Saxon to modify the terms of the Loan or Security Deed.  Id. ¶¶ 20, 21.

Defendant FHLM was an investor for Plaintiff's Loan.  Id. ¶ 26.  On August 12, 2009, Defendant Saxon became the servicer of the Loan.  Id. ¶ 27.

Plaintiff subsequently stopped making Loan payments.  On September 5, 2009, Defendant Saxon provided Plaintiff with written notice that Plaintiff was in default on the Loan and advised Plaintiff of how to cure her default.  Id. ¶ 30. Defendant Saxon simultaneously notified Plaintiff of its intent to accelerate payments due under the Loan.  Id. ¶ 29.  Plaintiff

AO 72A
(Rev. 8/82)

failed to timely pay her monthly Loan payments during 2009 and 2010. Id. ¶ 31.

On January 5, 2011, Defendant Saxon again provided Plaintiff with written notice that Plaintiff was in default on the Loan and advised Plaintiff of how she could cure her default. Id. ¶¶ 34, 35. Defendant Saxon simultaneously notified Plaintiff of its intent to foreclose on the Property if the default was not cured. Id. ¶ 35. Plaintiff made a partial payment on the Loan; however, the payment did not cure the default. Id. ¶ 37.

On January 24, February 26, and March 17, 2011, Defendant Saxon sent Plaintiff similar notices of intent. Id. ¶¶ 38-39, 41-42, 46-47. Each time, Plaintiff made partial payments on the Loan that were insufficient to cure the default. Id. ¶¶ 40, 43, 49. On April 27, 2011, Defendant Saxon sent Plaintiff an additional notice of intent. Id. ¶¶ 51-52. Plaintiff failed to make any payment on the Loan after April 25, 2011. Id. ¶ 50.

On March 4 and 30, 2011, Defendant Saxon advised Plaintiff, in writing, to contact Defendant Saxon to determine if Plaintiff

12

qualified for a Home Affordable Modification Program ("HAMP")[3] loan modification through the federal government. Id. ¶¶ 45, 56. On March 20, 2011, Defendant Saxon notified Plaintiff of various potential loss mitigation options, including a HAMP loan modification, repayment plan, and a short sale of the Property. Id. ¶ 54. The March 20th correspondence advised Plaintiff to continue to make the required Loan payments and stated that Defendant Saxon could not "guarantee that one of th[e] [potential loss mitigation] options [would] work for [Plaintiff's] circumstances." Id. ¶ 55.

In June 2011, Plaintiff submitted a HAMP application to Defendant Saxon. Id. ¶ 66. Defendant Saxon advised Plaintiff of the documentation necessary to complete the HAMP Application. Id. ¶¶ 68-74. Defendant also advised Plaintiff that her application could be denied for failure to provide the required documentation by July 20, 2011. Id. ¶ 75. Plaintiff failed to timely provide all of the requested documents. Id. ¶¶ 76-80; see also Dkt. No. 55-1, at 9-10.

_____

[3] HAMP was authorized by Congress as part of the Emergency Economic Stabilization Act of 2008, see 12 U.S.C. § 5219a(a), which has the stated purpose of giving the Secretary of the Treasury the "authority and facilities" necessary "to restore liquidity and stability to the financial system of the United States." 12 U.S.C. § 5201(1).

13

On July 21, 2011, Defendant Saxon initiated foreclosure proceedings against the Property. Dkt. No. 55 ¶ 81.

On August 9, 2011, MERS, on behalf of Taylor Bean, "sold, assigned, transferred, set over, and conveyed" to Defendant Saxon all of its rights, title, and interest in the Security Deed ("Assignment"). Id. ¶ 85.

On August 13, 2011, Defendant Saxon told Plaintiff that she could apply for approval to conduct a short sale of the Property. Id. ¶ 91. However, Defendant Saxon disavowed any guarantee that Plaintiff would qualify for a short sale. See id. ¶ 92.

In separate correspondences, each dated August 16, 2011, Defendant Saxon advised Plaintiff that her HAMP application was denied. Id. ¶¶ 93-94. In one correspondence, Defendant Saxon told Plaintiff that the denial "appears" to be based upon "insufficient income." Id. ¶ 93. In the other correspondence, Defendant Saxon told Plaintiff that the denial was based upon her failure to provide the required documents. Id. ¶ 94.

In September 2011, Plaintiff reapplied for a HAMP loan modification. See id. ¶ 101. Also in September, Defendant Saxon notified Plaintiff of a foreclosure sale advertisement that was scheduled for publication. Id. ¶ 115. Defendant Saxon

14

published the foreclosure notice in October 2011.  Id. ¶ 122.
In late October, Defendant FHLM denied Plaintiff's second HAMP
loan application because she "had the ability to pay [her]
current mortgage payment using cash reserves and other assets."
Id. ¶ 155.

Also in October 2011, Plaintiff pursued a short sale of the
Property.  Id. ¶ 131.  In late October, Plaintiff entered into a
Purchase and Sale Agreement with her husband.  Id. ¶ 139.
Plaintiff and Defendant Saxon communicated multiple times
regarding Plaintiff's application for a short sale.  Id. ¶¶ 144-
52.  Defendant Saxon requested various documents and informed
Plaintiff that it could not stop the foreclosure process unless
the short sale was timely approved.  Id.  Plaintiff failed to
provide the required documents prior to the foreclosure sale.
Id. ¶ 157.

On November 1, 2011, Defendant Saxon foreclosed on the
Property.  Id. ¶ 159.  Subsequently, Defendant Saxon conveyed
title to the Property to itself by foreclosure deed and, then,
conveyed title to the Property to Defendant FHLM.  Id. ¶¶ 160,
161.

15

C. Count 1:  Wrongful Foreclosure

In Count 1, Plaintiff alleges that Defendant Saxon wrongfully foreclosed on her Property.  See Dkt. No. 1 ¶ 72-78. In support of her claim, Plaintiff asserts that Defendant "Saxon unfairly exercised the power of sale for any one or any combination of the following disjunctive reasons:" (1) deception, (2) breach of contract, (3) breach of implied covenant of good faith, and (4) lack of authority to foreclose. Dkt. No. 84 ¶ 75.

Defendant Saxon asserts that Plaintiff's claim fails as a matter of law.  The Court agrees.  For the reasons stated below, Defendant Saxon's motion for summary judgment on Plaintiff's claim of wrongful foreclosure is **GRANTED**.

1.  Legal Standard

"Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised."  O.C.G.A. § 23-2-114.  A breach of the duty to fairly exercise a power of sale can support a claim of wrongful foreclosure.  See Calhoun First Nat'l Bank v. Dickens, 443 S.E.2d 837, 838 (Ga. 1997); see also Campbell v. Bank of America, N.A., No. 1:10-CV-3657-JEC, 2012 WL 879222, at *2 (N.D.

16

Ga. Mar. 12, 2012). To recover on a claim of wrongful foreclosure, a plaintiff must establish that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) causation, and (4) damages. See Gregorakos v. Wells Fargo Nat. Ass'n, 647 S.E.2d 289, 292 (Ga. Ct. App. 2007).

2. Application

The Court separately analyzes the ways in which Defendant Saxon allegedly wrongfully foreclosed on the Property.[4]

a. Deception

Plaintiff alleges that Defendant Saxon deceived Plaintiff by (1) using "Customer Advocates" to make Plaintiff believe that Defendant Saxon's "interests were aligned with [Plaintiff's interests]" and (2) making Plaintiff believe that Defendant Saxon "would not foreclose until [Plaintiff] had exhausted her alternative options to cure [her] default." Dkt. No. 84 ¶ 75(a). Plaintiff's claim is barred by the Statute of Frauds.

---

[4] Plaintiff asserts that analyzing the separate reasons for Defendant Saxon's allegedly wrongful foreclosure is inappropriate. See Dkt. No. 66, at 5. However, such an argument is contrary to plain language of Plaintiff's Amended Complaint. See Dkt. No. 84 ¶ 75 (asserting that Defendant "Saxon unfairly exercised the power of sale for any of or any combination of the following disjunctive reasons").

No "contract for sale of lands," "interest in, or concerning lands," or "commitment to lend money" is "binding on the promisor unless it is "in writing and signed by the party to be charged therewith." O.C.G.A. § 13-5-30. Moreover, if the Statute of Frauds requires a contract to be in writing, "any modification of the contract must also be in writing." RHL Props., LLC v. Neese, 668 S.E.2d 828, 830 (Ga. Ct. App. 2008) (citation omitted). Thus, an alleged agreement to reinstate or modify a mortgage loan is unenforceable unless it is in writing. See, e.g., Allen v. Tucker Fed. Bank, 510 S.E.2d 546, 547 (Ga. Ct. App. 1998) (finding that a claim that the "Bank orally agreed to reinstate [the borrower's] mortgage following foreclosure [was] untenable in the absence of a written agreement"); see also Vie v. Wachovia Bank, N.A., No. 1:11-CV-3620-RWS, 2012 WL 1156387, at *4 (N.D. Ga. Apr. 6, 2012) (concluding, under Georgia's Statute of Frauds, that any agreement to modify the loan was unenforceable because the borrower "failed to make a plausible showing that a valid written modification existed between the parties"); Ogburn v. Chase Home Fin. LLC, No. 1:11-CV-1856-TWT, 2011 WL 5599150, at *2 (N.D. Ga. Nov. 16, 2011) (finding that Georgia's Statute of Frauds barred the borrower's claim that the lender promised to

18

refinance the mortgage where the borrower failed to allege that a written contract existed); Kabir v. Statebridge Co., LLC, No. 1:11-CV-2747-WSD, 2011 WL 4500050, at *7 (N.D. Ga. Sept. 27, 2011) ("Oral and unwritten agreements regarding interests in lands; to include reinstating a mortgage, refinancing a mortgage, or forbearing from foreclosure proceedings; are unenforceable under the Georgia Statute of Frauds"). Consequently, a claim for fraud and/or misrepresentation based on a lender's oral statements that it would reinstate or modify a loan cannot support a claim of fraud. See Vie, 2012 WL 1156387, at *3-4 (dismissing borrower's fraud claim based on lender's alleged misrepresentations that it would modify a loan because the agreement to modify was not in writing).

Plaintiff defaulted on her Loan. Thereafter, Defendant Saxon satisfied its obligations to provide notice under the Security Deed. See infra Part IV.C.2.b. Consequently, Defendant Saxon could—consistent with the terms of the parties' agreement—conduct a foreclosure sale of the Property.

Any promise or agreement by Defendant Saxon to provide a loan modification, approve a short sale of the Property, or halt the foreclosure sale would have been a modification of the Security Deed. Plaintiff provided no evidence that any of the

19

alleged modifications to the Security Deed were in writing and signed by Defendant Saxon.   Consequently, the alleged promises or agreements are barred by the Statute of Frauds and unenforceable.

> b. Breach of Contract

Plaintiff alleges that Defendant Saxon "breached [its] contractual obligation to provide [Plaintiff] a meaningful opportunity and notice to cure her default as required under Paragraphs 19 and 22 of the Security Deed."   Dkt. No. 84 ¶ 75(b).   Plaintiff's claim fails as a matter of law.

Prior to accelerating the Loan, Defendant Saxon was required by the terms of the Security Deed to provide Plaintiff with notice of the following:  (1) Plaintiff's default; (2) the action required by Plaintiff to cure the default; (3) "a date, not less than 30 days from the date the notice is given to [Plaintiff], by which the default must be cured;" and (4) notification "that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums owed by [the Security Deed] and sale of the Property." See Dkt. No. 55 ¶ 25.   Defendant Saxon fulfilled these conditions.

AO 72A
(Rev. 8/82)

First, Plaintiff defaulted on her loan.  Id. ¶ 50.  Second, Defendant Saxon sent a notice of intent to Plaintiff on April 27, 2011 ("Notice of Intent").  Id. ¶¶ 51-52.  Plaintiff received the Notice of Intent.  Id. ¶ 51.  The Notice of Intent notified Plaintiff that:  (1) the Loan was in default; (2) to cure the default, Plaintiff had to pay Defendant Saxon $8,789.72; and (3) said payment had to be sent to Defendant Saxon by May 30, 2011.  Id. ¶ 52.  Third, the payment deadline specified in the Notice of Intent was more than thirty (30) days after Defendant Saxon provided the Notice of Intent.  Fourth, the Notice of Intent informed Plaintiff that—if the default was not cured by May 30, 2011—Defendant Saxon might accelerate the Loan and initiate foreclosure proceedings.  See id. ¶ 52.  The Notice of Intent also informed Plaintiff of her right to reinstate the Note after acceleration.  See id. at 16.

Because Defendant Saxon fulfilled the Security Deed's notification requirements, Defendant Saxon did not breach paragraphs 19 or 22 of the Security Deed.

    c. Breach of Implied Covenant of Good Faith

Plaintiff alleges that "[i]n exercising the power of sale, . . . [Defendant Saxon] breached the implied contractual

21

covenant of good faith dealing to provide [Plaintiff] a meaningful opportunity and notice to cure her default." Dkt. No. 84 ¶ 75(c).  Plaintiff's claim fails as matter of law.

Georgia law implies a duty of good faith and fair dealing in all contracts.  See Tommy McBride Realty, Inc. v. Nicholson, 648 S.E.2d 468, 470 (Ga. Ct. App. 2007); see also O.C.G.A. § 23-2-114 ("Powers of sale in deeds of trust, mortgages, and other instruments . . . shall be fairly exercised.").  However, "there can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." Ameris Bank v. Alliance Inv. & Mgmt. C., LLC, 739 S.E.2d 481, 486 (Ga. Ct. App. 2013); see e.g., Martin v. Hamilton State Bank, 723 S.E.2d 726, 727 (Ga. Ct. App. 2012) (affirming summary judgment for lender on claim of breach of the implied covenant of good faith and fair dealing based on lender's refusal to restructure the debt because, after borrower's default, lender had explicit right to declare default and pursue collection of debt).

After Plaintiff failed to cure her default, Defendant Saxon exercised its express right under the Security Deed to invoke its power of sale and foreclose on the Property.  In so doing, Defendant Saxon complied with the Security Deed's terms.  See

22

supra Part IV.C.2.b.  Consequently, Plaintiff's claim of breach of an implied covenant of good faith fails as a matter of law. See Ameris Bank, 739 S.E.2d at 486.

### d. Lack of Authority to Foreclose

Plaintiff alleges that the Assignment of the Security Deed "was deficient because it was in violation of O.C.G.A. § 14-5-7 due to the absence of a proper attestation of a corporate secretary or other authorized person; and [because] no corporate seal [was] affixed to the document."  Dkt. No. 84 ¶ 75(d). Plaintiff further argues that, because the attempted Assignment of the Security Deed to Defendant Saxon was deficient, Defendant Saxon "lacked the authority to foreclose on the . . . Property." Id. ¶ 75(d).  As noted above, however, Plaintiff lacks standing to challenge the Assignment.  See supra Part III.C. Consequently, her claim fails as a matter of law.

### 3.  Conclusion

Defendant Saxon did not wrongfully foreclose Plaintiff's Property for any of the reasons alleged in Plaintiff's Amended Complaint.  Consequently, Defendant Saxon's motion for summary judgment on Count 1 is **GRANTED.**

23

D. Counts 2-7

In Counts 2 through 7, Plaintiff presumes that Defendant Saxon's foreclosure sale was unlawful. See Dkt. No. 1 ¶¶ 79-111; Dkt. No. 84. It was not. See supra Part IV.C. Thus, Plaintiff's remaining claims fail as a matter of law. Consequently, Defendant Saxon's motion for summary judgment on Counts 2-7 is **GRANTED**.

## V. CONCLUSION

Defendant FHLM's Motion to Dismiss is **GRANTED**. Dkt. No. 88. Accordingly, Defendant FHLM's Motion for Summary Judgment is **DENIED** as moot. Dkt. No. 59. Defendant Saxon's Motion for Summary Judgment is **GRANTED**. Dkt. No. 56.

The Clerk of Court is directed to enter the appropriate judgments and close the case.

**SO ORDERED**, this 22nd day of August, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)